IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUCYNA E. SOPALA, <br><br> Plaintiff, <br><br> v. <br><br> MENARD, INC., <br><br> Defendant. | Case No. 19-cv-830 <br><br> Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this negligence action against Menard for injuries she suffered after tripping and falling at a Menard retail hardware store in Melrose Park, Illinois. For the reasons stated below, Menard's motion for summary judgment [32] is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 250 (internal quotations omitted).

1

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). In doing so, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## BACKGROUND[1]

### I. Parties and Procedural History

Plaintiff Lucyna Sopala ("Sopala") and her husband Marek Sopala ("Marek") were customers at Menard's retail hardware store located at 3215 West North Avenue, Melrose Park, Illinois (the "Melrose Park Menards"). (DSOF ¶¶8, 9). Defendant Menard, Inc. ("Menard") is a Wisconsin corporation with its principal place of business in Eau Claire, Wisconsin. (Dkt. 1 at 2).

Sopala filed her complaint against Menard in Illinois state court on December 26, 2018. (Dkt. 1-1) (hereafter, "Complaint"). Menard removed the case to federal court

---

[1] The facts in this Background section are undisputed unless otherwise noted. Defendant's Rule 56.1 Statement of Facts (Dkt. 34) is abbreviated as "DSOF". Plaintiff responded to Defendant's Statement of Facts and also asserted three uncontested facts. Plaintiff's uncontested facts are abbreviated as "PSOF". Plaintiff's response brief, response to Defendant's Statement of Facts, and her own uncontested facts are combined in one document at Dkt. 36.

2

on February 8, 2019. (Dkt. 1). This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a)(1).[2]

**II. Sopala's Fall**

Sopala and her husband visited the Melrose Park Menards on January 15, 2017. (DSOF ¶¶9, 10). Sopala and Marek went up to the store's second floor. (*Id.* ¶12). Marek walked ahead of Sopala; he was looking straight ahead and did not see anything on the floor and did not slip. (*Id.* ¶¶13-15). Sopala walked down the aisle, then felt something under her right shoe, lost her balance, and fell. (*Id.* ¶¶16-17). The fall occurred at 1:00:52 p.m. (*Id.* ¶18). Sopala's fall was captured on video by one of Menard's surveillance cameras. (*Id.* ¶11; Exh. C).[3]

Neither Sopala nor Marek know how long the bath beads were on the floor before Sopala fell. (*Id.* ¶20). They did not know how the bath beads got there or who caused the bath beads to be on the floor. (*Id.* ¶ ¶21-22). Before her fall, neither Sopala nor Marek saw the bath beads. (*Id.* ¶23). Neither Sopala nor Marek knows of any other guest or customer that had slipped on bath beads before. (*Id.* ¶24). After her fall, a group of five or six people came to Sopala's side, including two Menard team members. (*Id.* ¶26). Marek was in a different part of the store when she fell (PSOF ¶1) but returned to her at 1:02:20 p.m. (DSOF ¶27).

---

[2] Sopala was a citizen of Illinois at the time of removal to this Court (Dkt. 1), making her citizenship diverse from Menard's for purposes of 28 U.S.C. § 1332(a)(1). In addition, the parties do not dispute that Illinois substantive law applies. "In a diversity case such as this one, where neither party raises a conflict of law issue, federal courts apply the law of the state in which they sit." *Roh v. Starbucks Corp.*, 881 F.3d 969, 973 (7th Cir. 2018).

[3] The authenticity and admissibility of the video are uncontested. (*see* DSOF ¶11; Dkt. 36).

3

By the time Marek arrived, over ten people had walked in the area of Sopala's fall. (*Id.* ¶28). After returning, Marek began taking pictures. (*Id.* ¶29). Sopala saw the Menard team members clean up the bath beads with a broom and dustpan; they did not use a mop, sponge, or rag to clean. (*Id.* ¶¶31-32).[4]

All Menard employees on duty are trained to remain vigilant to identify any potential safety hazards and to address those potential hazards upon notice. (*Id.* ¶34). Menard is aware of no trip and fall accidents similar to Sopala's within the last five years. (*Id.* ¶35). Francisco Delrio was the plumbing department manager and Miguel Quintero was a part-time plumbing team member at the Melrose Park Menards on January 15, 2017. (*Id.* ¶¶36-37). Sopala's fall occurred in the plumbing department, which takes up almost half of the second floor of the store. (*Id.* ¶¶38-39). Anywhere from five to eight Menard employees work in the plumbing department at any one time, and team members from other departments also walk through the plumbing department. (*Id.* ¶¶40-41). Delrio testified that he and the other plumbing department team members were constantly walking around the department. (*Id.* ¶42). While walking around the sales floor performing other tasks, Menard employees are also looking at the floor for trip hazards, and commonly carry a rag so that they can take care of spills if they see one. (*Id.* ¶¶43-44). Delrio testified that, in situations where a Menard employee becomes aware of a tripping hazard on the ground while walking around, the employees "[c]lean it up right away." (*Id.* ¶45). Delrio testified

---

[4] The Court notes that an incident report from Sopala's accident is mentioned in depositions (e.g. Marek Sopala Dep. (Dkt. 34-2) 7:15; Francisco Delrio Dep. (Dkt. 34-5) 34:24) but the parties did not attach or provide the report as evidence on summary judgment.

4

that, where a Menard employee discovers a tripping hazard and does not have the tools to clean it up themselves, they will stay near the hazard, block off the area, and get a manager involved. (*Id*. ¶46).

Delrio testified that he walked in the area of Sopala's fall very frequently on January 15, 2017. (*Id*. ¶47). Quintero testified that he walked in the area of her fall "[m]ultiple times" on that date. (*Id*. ¶48). While walking in the area of Sopala's fall, Delrio testified that he was looking for tripping hazards. (*Id*. ¶49). Quintero testified that he was aware of the floor and was cognizant of hazards as he performed his other job tasks. (*Id*. ¶50). Prior to Sopala's incident, Quintero and Delrio were not aware of any foreign substance on the ground where Sopala fell. (*Id*. ¶51). Delrio and Quintero responded to the scene of her accident within a minute of her fall and noticed approximately fifteen to twenty red scented bath beads on the floor. (*Id*. ¶¶52-53). Menard sold the red scented bath beads, but they were stocked in an aisle several feet away from where Sopala fell. (*Id*. ¶54). A jar of red scented bath beads on top of other merchandise near a "4-way" display nearest to Sopala's fall was out of place; meaning that is not where the bath beads are usually displayed by Menard employees. (*Id*. ¶55). Delrio testified that a Menard employee or vendor would not have any business putting the jar of red scented bath beads where it did not belong, and the misplaced jar would have stuck out like a "sore thumb" to himself and any other team member. (*Id*. ¶¶56-57). Delrio testified that he or any other team member would have put the misplaced jar back to its stock location had they noticed it. (*Id*. ¶58).

Other than a guest causing them to be there, Delrio could not come up with any other explanation for why the beads were on the floor. (*Id.* ¶61). Of the fifteen to twenty red scented bath beads Delrio noticed on the floor when he arrived at the scene, Delrio estimated ten to fifteen percent had been stepped on. (*Id.* ¶62). Of the fifteen to twenty bath beads, roughly half were smashed two minutes later when Marek took the photos in Exhibit D. (*Id.* ¶63). Neither Delrio nor Quintero has any idea how the bath beads got on the ground. (*Id.* ¶69). In the six years Delrio worked in the plumbing department, he had never heard of any complaints that he or Menard received about the condition of the floor where Sopala fell. (*Id.* ¶77). Quintero similarly testified that he is not aware of any complaints about the floor where she fell. (*Id.* ¶78).

## ANALYSIS

**I. Local Rule 56.1**

Local Rule 56.1 requires, among other things, the party opposing summary judgment provide a response that contains "numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed" and "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1. "Local Rule 56.1 statements serve to streamline the resolution of summary judgment motions by having the parties identify undisputed material facts and cite the supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.*, 2019

U.S. Dist. LEXIS 211194, at *4 (N.D. Ill. Dec. 9, 2019) (citation omitted). The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019) (internal citation and quotations omitted). "We have frequently said that it is within the district court's discretion to strictly enforce local rules regarding summary judgment by accepting the movant's version of facts as undisputed if the non-movant has failed to respond in the form required." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014).

Sopala's response to DSOF ¶16 and ¶27 are unresponsive so those facts are deemed admitted. Her response to DSOF ¶25 mischaracterizes the record by pointing to a portion of Sopala's deposition that does not mention whether she saw that the bath beads were smashed, while the portion of her deposition cited by Menard shows that she testified that she did not see the bath beads smashed on the floor after she got up. (Sopala Dep. (Dkt. 34-1), pp. 22-23). Sopala's response to DSOF ¶51 appears to agree with the statement but to the extent she intended to disagree, her response does not comply with LR 56.1. Further, as Menard points out, Sopala in her response brief relies on facts not mentioned in her statement of additional facts, such as that the proper display of the bath beads was "five to ten steps" away from her fall. (Dkt. 36 at 4). That fact is disregarded. *See Gray v. Ghosh*, 2013 U.S. Dist. LEXIS 142964, at *15 (N.D. Ill. Oct. 3, 2013) ("facts may be considered on summary judgment only if they are presented in a compliant Local Rule 56.1 statement or response.").

7

Finally, Sopala responds to nine of Menard's statements of fact as speculative. (Dkt. 36 at pp. 11-12). The Court agrees that some are based on speculation, but others are based on the Menard's employees' testimony about their practices and procedures. In any event, the particular statements Sopala objects to as speculative are not outcome-determinative because as discussed below, it is her burden to provide some evidence making it more likely that Menard rather than a customer caused the bath beads to spill and some evidence showing Menard had constructive notice of the bath beads on the ground.[5]

The Court now turns to Menard's motion which asserts two reasons that summary judgment in its favor is warranted: (1) Sopala has not shown that Menard proximately caused her injuries, and (2) she has not presented any evidence demonstrating that Menard had actual or constructive notice that the bath beads were on the floor.

**II. Placement of the Substance**

The elements of negligence under Illinois law are the "existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Simpkins v. CSX Transp., Inc.*, 358 Ill. Dec. 613, 617, 965 N.E.2d 1092, 1096 (Ill. 2012). As to the first element, "[i]n Illinois, landowners owe business invitees a duty of care to keep their premises reasonably safe." *McCarty v. Menard, Inc.*, 924 F.3d 460, 462 (7th Cir. 2019) (citing *Piotrowski v.*

---

[5] *See Gunby v. Aldi, Inc.*, 2019 IL App (1st) 171289-U, ¶ 36 (2019) (mere occurrence of an accident not enough to support an inference of negligence); *Zuppardi*, 770 F.3d at 651 (plaintiff failed to meet her burden of demonstrating Wal-Mart's constructive notice of the dangerous condition).

8

*Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016). When a business's invitee is injured by slipping on a foreign substance on its premises, the business can be liable "if the invitee establishes that (1) the substance was placed there by the negligence of the business; (2) the business had actual notice of the substance; or (3) the substance was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered, i.e., the business had constructive notice of the substance." *Zuppardi,* 770 F.3d at 649 (citations omitted).

There is an exception to the notice requirement if plaintiff "present[s] some evidence showing that the substance was more likely placed on the premises through [the business's] negligence rather than a customer's." *Id.* at 650. A plaintiff can avoid summary judgment based on this exception if (1) "the substance on the floor was a product sold or related to defendant's operations," and (2) "the plaintiff offers some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises." *Donoho v. O'Connell's, Inc.*, 13 Ill. 2d 113, 122, 148 N.E.2d 434, 439 (1958).

It is undisputed that Sopala was an invitee of Menard's and Menard owed her a duty to keep its premises reasonably safe. The question then is whether Menard breached that duty and whether that breach proximately caused Sopala's injuries. Menard contends that there is no evidence of causation. Sopala responds that she meets the *Donoho* standard because it is undisputed that she fell on bath beads sold

9

by Menard and because of evidence of the proximity of the bath beads container to her fall.

Sopala is correct that the undisputed evidence shows that the bath beads were sold by Menard. (DSOF ¶54). The first part of the *Donoho* test is satisfied. To meet the second part of the test, Sopala must "offer[] some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises." *Donoho*, 13 Ill. 2d at 122. Sopala argues that the close proximity of the bath beads to her fall "is further evidence to infer that it was an employee of Menard who placed the beads on the shelf near the fall." (Dkt. 36 at 4).

Sopala relies on *Lane v. Hardee's Food Sys.*, 184 F.3d 705 (7th Cir. 1999). There the Seventh Circuit concluded that the district court erred in entering a Rule 50 judgment in favor of the restaurant because:

> A jury could reasonably infer from the restaurant's daily practice of cleaning the restroom floor after breakfast at 10:30 a.m. that the floor was indeed mopped at around that time on the day of the accident. The most favorable reading of Lane's time line put the plaintiff in the restroom soon after the inferred mopping. From the fact that spilled water or residual dampness is not an unusual by-product of mopping and from the alleged mopping's proximity to the accident, a jury could reasonably conclude that Hardee's, rather than another customer, was responsible for the dangerous condition.

*Id*. at 708. The evidence of the restaurant's daily practice of mopping shortly before Lane's accident was similar to the evidence in *Donoho*. *Id*. at 709 (citing *Donoho*, 13 Ill. 2d at 124). In *Donoho*, plaintiff slipped on an onion ring and the

10

evidence showed that about 15 minutes before plaintiff fell, the "table had been cleared by the bus boy, who had a practice of clearing the tables by putting the dirty dishes on a tray, which he would set on a chair while he wiped the debris off the counter with a damp cloth, so that particles could drop to the floor; and that no one else had since been at the counter, or in the particular area." 13 Ill. 2d at 124.

However, unlike in *Lane* or *Donoho*, Sopala has offered no evidence that Menard employees had a daily practice of stocking shelves in the plumbing department shortly before the time of Sopala's fall or that any Menard employee in fact stocked shelves there before or around the time of her fall. Sopala has also offered no evidence that Menard employees had any habit or practice of misplacing items and no evidence from which it could be inferred that a Menard employee misplaced the bath beads in the plumbing department that day.

This case is more similar to *Delgado, Zuppardi* and *Piotrowski*. In *Delgado v. Meijer Stores Ltd.*, 2012 IL App (3d) 110314-U (2012), plaintiff slipped on a liquid substance as she approached a checkout line at Meijer grocery store. Plaintiff did not see the substance before she fell but testified that an employee stated that the substance was shampoo. And although there was proof that shampoo was a product sold by defendant, plaintiff "did not present any evidence that the location of the substance, approximately five feet from the conveyor belt in a check-out aisle, made it more likely that an employee, rather than a customer, spilled the shampoo." *Id.* ¶ 21 (citing *Thompson v. Econ. Super Marts*, 221 Ill. App. 3d 263, 581 N.E.2d 885 (1991) and *Olinger v. Great Atl. & Pac. Tea Co.*, 21 Ill. 2d 469, 173 N.E.2d 443 (1961)).

11

Plaintiff "also failed to establish that any business practice of the defendant made it more likely that the substance was dropped by defendant's employee than a third person." *Id*.

In *Zuppardi,* plaintiff slipped on a puddle of water in an aisle at Wal-Mart. 770 F.3d at 646. The Seventh Circuit explained that in order to survive summary judgment and "create a triable issue of fact with respect to placement of the substance by Wal-Mart, [plaintiff] needed to present some evidence showing that the substance was more likely placed on the premises through Wal-Mart's negligence rather than a customer's." *Id*. at 649. Even though plaintiff believed she slipped on water and it was undisputed that Wal-Mart sells water bottles, she did not offer any other evidence "tending to show that it was more likely that Wal-Mart was responsible for spilling it on the ground." *Id*. at 650. Similar to the plaintiff in *Zuppardi*, here Sopala did not know where the substance came from, did not see it before she fell, and did not testify that she saw any store employees as she walked down the aisle before her fall. *Id*. at 646, 650. Indeed the video shows several customers walk near or through the area of Sopala's fall shortly before she walks there. The video does not depict, and Sopala does not argue, that any employees were in the area of her fall shortly before she walked there.

Sopala is correct that the facts of *Zuppardi* are not identical to those in this case: in *Zuppardi*, there was no evidence that a water bottle was found near the location of the spill and water bottles were located six aisles away from the location of the puddle. *Id*. Here, a jar of red bath beads was found near Sopala's fall, although the

12

jar was not where Menard employees usually place bath beads. (DSOF ¶55). And the usual placement of bath beads is several feet away from where Sopala fell (*Id.* ¶54), not six aisles away as in *Zuppardi*. On the other hand, there was additional evidence in *Zuppardi* not present here: the location where plaintiff fell was used regularly by employees to restock items found throughout the grocery section, and plaintiff testified that a Wal-Mart employee may have been restocking water at the time of her fall. *Id.* at 646, 650. Still, the Seventh Circuit held that it was "insufficient for [plaintiff] to solely provide a possible way in which a Wal-Mart employee could have caused the spill; she cannot merely 'identif[y] a potential source' of the spill to avoid summary judgment." *Id.* at 650.

In *Piotrowski,* a case not addressed by Sopala, plaintiff slipped on rocks in a Menard's parking lot. 842 F.3d at 1037. The Seventh Circuit held that plaintiff's belief that she fell because of Menard's negligence was speculation. *Id.* It was "not enough to say that Menard sold river rocks and used river rocks to fill a planter in the parking lot—that much is true. But it is not true that the plaintiffs have adduced evidence that the rocks' placement in the parking lot was more likely caused by Menard's negligence rather than by that of a customer or other third party." *Id.* at 1039. *See also Mitts v. Costco Wholesale Corp.*, 2017 U.S. Dist. LEXIS 202258, at *7 (N.D. Ill. Dec. 8, 2017) ("While it is at least possible that defendant negligently caused the spill to the extent that plaintiff slipped on 'something that happens to be sold' by defendant, that is not enough to support a reasonable inference that it is more likely that defendant caused the spill than a customer.") (citations omitted); *Gonzalez v.*

13

*Bedolla Enters.*, 2012 IL App (1st) 120822-U, ¶ 30 (distinguishing *Donoho* because plaintiff did not provide any evidence that any defendant employee "wheeled produce from the back of the store and tracked moisture in front of the onion display, a dry produce item, at any time prior to Gonzalez's fall, let alone shortly before her fall.").[6]

Thus Sopala has identified a potential source of the spill—a Menard employee. But another potential source of the spill was a customer, and Sopala does not provide evidence making it "*more likely* that defendant or his servants, rather than a customer, dropped the substance on the premises." *Donoho*, 13 Ill. 2d at 122 (emphasis added).

Because Sopala has not shown that she meets the requirements of *Donoho*, the Court turns to the issue of notice.

**III. Notice**

Sopala argues only that Menard had constructive (not actual) notice of the dangerous condition. (Dkt. 36 at 5-6). "Constructive notice can be established in Illinois by presenting evidence that the dangerous condition was present for a sufficient length of time such that in the exercise of ordinary care its presence should have been discovered, or by showing that the dangerous condition was part of a pattern of conduct or a recurring incident." *Piotrowski*, 842 F.3d at 1040 (citations

---

[6] Although Sopala argues that the Court should infer from the proximity of the bath beads to her fall that "an employee of Menard [] placed the beads on the shelf near the fall" (Dkt. 36 at 4), Sopala does not explain how it is reasonable to infer from the placement on the shelf that a Menard employee was responsible for the bath beads *spilling*. *See Zuppardi*, 770 F.3d at 646 (plaintiff did not offer evidence "tending to show that it was more likely that Wal-Mart was responsible for spilling [the water] on the ground."); *Mitts*, 2017 U.S. Dist. LEXIS 202258 at *7 (evidence not enough to support reasonable inference that it was more likely that defendant, not a customer, *caused the spill*).

14

omitted). The length of time the substance was on the ground is "[o]f critical importance" where constructive knowledge is claimed. *Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479, 481-82 (7th Cir. 2008) (citations omitted).

Sopala argues that the existence of smashed bath beads, as seen in the photos, is enough evidence from which a jury could infer that a sufficient amount of time passed such that Menard should have discovered the bath beads on the floor. (Dkt. 36 at 5-6). Yet Sopala concedes that there is "no indication of when exactly the beads were broken", that they could have been smashed "by other customers before Sopala even arrived", "during Sopala's fall", or even "after several employees came to help her up". (*Id*. at 6). She concedes she has not established any "specific timeframe." (*Id*. at 7). Thus Sopala has not provided evidence of how long the bath beads were on the floor before her fall. She also has not provided evidence (or argued) that the dangerous condition was a "pattern of dangerous conditions or a recurring incident which was not attended to within a reasonable period of time." *Piotrowski*, 842 F.3d at 1040.

Sopala relies on *Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603 (7th Cir. 2001). There, plaintiff slipped on lotion in a Wal-Mart aisle. Two Wal-Mart employees testified that they had walked down the aisle just minutes before the accident and had seen no sign of spillage, but plaintiff testified that he had been waiting in the aisle for ten minutes and during that time had not seen any employees or heard any sound of breakage. *Id*. at 604. The Seventh Circuit found that a jury could infer from plaintiff's testimony that the spill occurred at least ten minutes before the accident. *Id*. Recognizing that Wal-Mart did not have a duty to continuously patrol the aisles,

15

the Court explained that there was also no "flat rule in Illinois that ten minutes is always too short a period for a duty of inspection and clean up to arise." *Id*. at 604-05.

By contrast, here, Sopala has not provided any evidence from which a jury could infer that a certain amount of time passed between the spilling of the bath beads and her fall. Sopala did not testify that she lingered or waited in the aisle for a certain amount of time, as did the plaintiff in *Peterson*. She also has not provided testimony from any other witnesses who saw the bath beads before Sopala's fall. *See Dunlap v. Marshall Field & Co.*, 27 Ill. App. 3d 628, 631, 327 N.E.2d 16, 19 (1975) ("[if] there is no showing of how [the substance] reached the floor, there must be evidence of sufficient notice to defendant of the presence of the substance so that defendant, in the exercise of ordinary care, would have discovered it."); *Reid*, 545 F.3d at 482 ("Absent any evidence demonstrating the length of time that the substance was on the floor, a plaintiff cannot establish constructive notice.); *Delgado*, 2012 IL App (3d) 110314-U, ¶ 17 ("There was [] no evidence regarding how long the substance had been [on the floor]. Absent such evidence, plaintiff could not establish that defendant had constructive notice of the substance.").

Sopala also cites the Menard employee's testimony that there was "a lot" of traffic in the plumbing department that day. (Dkt. 36 at 6).[7] She also acknowledges the employees' testimony that they frequently patrolled the store for spills (*id*.) and does not dispute that these employees testified that they were not aware of any foreign

---

[7] This fact is not included in Sopala's Rule 56.1 statement of additional facts.

16

substance on the ground where Sopala fell. (DSOF ¶51). Even considering the fact that there was "a lot" of traffic that day, that alone does not establish that Menard had constructive notice of the substance on the ground. *Cf. Peterson,* 241 F.3d at 604-05 (plaintiff testified that he was waiting in the aisle for ten minutes, and the Court found that ten minutes could be enough time for Wal-Mart's duty of inspection and clean up to arise.).

Accordingly, Sopala has not met her burden to show Menard had constructive notice of the bath beads on the floor. *Zuppardi*, 770 F.3d at 651. Summary judgment is therefore warranted in Menard's favor.

## CONCLUSION

For the stated reasons, Defendant Menard Inc.'s motion for summary judgment [32] is granted. The Clerk is directed to enter judgment in Menard's favor and terminate the case.

E N T E R:

Dated: August 13, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

17